RECEIVED
IN ALEXANDRIA, LA.
FEB - 8 2011
TONY R. MOORE, CLERK
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JESSE ANDREW JARVIS

CIVIL ACTION NO. 09-cv-1621

VERSUS

DISTRICT JUDGE DEE D. DRELL

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION

Jesse Andrew Jarvis ("Jarvis") filed a Title XVI application for Social Security Income ("SSI") on April 30, 2007 (R. 58). The claim was initially denied on July 25, 2007 and Jarvis timely filed a request for hearing before an Administrative Law Judge ("ALJ") (R. 58, 62-63). The ALJ held a hearing on October 30, 2008 (R. 19-55) and issued an unfavorable decision on April 7, 2009 (R. 6-18). Jarvis sought review by the Appeals Council but review was denied on July 24, 2009 (R. 1-4). As the decision became the final decision of the Commissioner of Social Security ("the Commissioner"), Jarvis filed the instant action seeking judicial review.

To qualify for SSI under Title XVI of the Social Security Act, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. §1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must

demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. §1382(a)(3).

## Summary of Pertinent Facts

Jarvis, his attorney, witness, Helen Walters, and vocational expert, Wendy Klamm, attended the hearing on October 30, 2008. At the time of the hearing, Jarvis was 33 years old (R. 24). Jarvis testified he had not worked at all since his injury on April 24, 2007. Yet, he later advised he returned to work for four days that summer (R. 24, 45).

Jarvis advised his onset date corresponded with a head injury sustained during a seizure which resulted an a blood clot and subsequent surgery (R. 27-28). Since that time, he experienced both petit and grand mal seizures (R. 26). However, medication seemed to improve any occurrence of petit mal seizures (R. 26). He further stated that while he did not pass out when he experienced a petit mal seizure, he did pass out and could not recall anything about the event when he had a grand mal seizure (R. 26-28).

Jarvis testified he could drive short distances, cut the grass, take care of the outside of the house, occasionally bar-b-

2

que, do some housekeeping such as sweeping and vacuuming, take out the garbage, assist his girlfriend with grocery shopping, care for himself, care for their pets and pay bills (R. 29-34). Jarvis indicated he visited with friends and family on occasion and though he found himself to be more irritable with his grandmother since his head injury, he generally got along well with people (R. 30, 34).

When questioned by the ALJ about the link of his seizures with drinking, Jarvis acknowledged his doctor cautioned him about drinking alcohol with his medications. However, he continued to drink on a nightly basis (R. 31).

Jarvis' grandmother, Helen Walters, also testified. She advised that his testimony was not accurate (R. 37) For example, he did not do any work around the house and he did not take care of his checkbook because he could not even manage his medications (R. 37-39, 41). When asked why he would not be truthful, she indicated that she guessed he was trying to feel productive (R. 37).

She further advised that his quick temper had only become worse since his brain surgery in April of 2007 and he continued to experience seizures despite the fact he was compliant with taking Kepra every day (R. 37, 40-43). However, she did not deny he continued to drink alcohol (R. 42).

Wendy P. Klamm, vocational expert, also testified at the hearing. The ALJ inquired as to the whether someone with a

residual functional capacity ("RFC") to perform simple, unskilled repetitive work; who could make only simple, work related decisions; deal occasionally with changes in work process and environment; could not be exposed to hazards such as heights, moving machinery or climbing of ropes, ladders or scaffolds could return to construction work (R. 47). Ms. Klamm advised that a person with those restrictions could not return to such work (R. 47). However, that same person could perform the work of an automobile detailer, a hand packager and a kitchen helper and, if the work was to be reduced to the light physical exertion requirements, he could perform the work of a small products assembler, press operator in a laundry and laundry classifier (R. 47-48).

Jarvis' attorney was provided the opportunity to question Ms. Klamm and in fact did so. He asked whether a person who experienced seizures which required him to take unscheduled breaks and would require a significant time to recover would be able perform the aforementioned work. Ms. Klamm advised that given these restrictions, no jobs would be available (R. 49-50).

The ALJ issued his decision on April 7, 2009 (9-18). In the decision, he found Jarvis, a younger individual as of the date of the decision, had not engaged in substantial gainful activity since April 30, 2007 and could not return to any prior relevant work (R. 11, 16-17). Jarvis' severe impairments included seizure disorder,

4

cognitive disorder, status post closed head injury and alcoholism; however, none of the impairments either alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 11-12).

The ALJ also determined that Jarvis had the residual functional capacity to perform a wide range of work at all exertional levels with nonexertional limitations of performing simple, repetitive work, making only simple work related decisions, dealing only with occasional changes in work process or environment and not being exposed to workplace hazards such as unprotected heights, dangerous moving machinery and/or the climbing of ladders, ropes or scaffolds (R. 13). Considering Jarvis' age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy he could perform (R. 17). Specifically, he could perform the jobs of automobile detailer, hand packer and kitchen helper (R.17-18). Thus, Jarvis was found not to be disabled as defined in the Social Security Act (R. 18).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v.

5

Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. It must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Also,

Dellolio, 705 F.2d at 125.

## Issues

Jarvis raises the following issues for review:

1. Whether the Commissioner erred by not finding Jarvis suffered from an impairment or combination of impairments which met or equaled a listing under the Social Security Act;

2. Whether the Commissioner erred by not having a medical expert present at the hearing as a matter of law in failing to comply with Social Security Ruling 96-7 in addressing plaintiff's failure to follow prescribed treatment; and

3. Whether the ALJ erred in interpreting the testimony of the vocational expert.

## Impairment Meets or Medically Equals a Listing

### Listings 11.02 and 11.03

Jarvis argues that his severe impairments, either alone or in combination, meet or medically equal Listings 11.02 and 11.03. Both Listing 11.02 (Epilepsy - Grand Mal) and Listing 11.03 (Epilepsy - Petit Mal) require evidence of a typical seizure pattern occurring more frequently than once a month in spite of at least three months of prescribed treatment. As noted by the ALJ, Jarvis' medical records show his prescribed treatment included abstaining from using alcohol (R. 516, 524). However, he readily admitted he continued to drink beer on a nightly basis (R. 455, 31). Further, medical records indicate that he was seizure free when he was recovering from surgery and was both compliant with medication and abstaining from alcohol (R. 189). Yet, three months

after his discharge, his seizures returned and many of those were accompanied by alcohol use (R. 274, 329,578, 606, 608).[1]

Section 105 of the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-55 (1996), prohibits the award of DIB and SSI to individuals disabled by alcoholism or drug addiction. See 42 U.S.C. §§ 423(d)(2)(C). Though the ALJ will consider whether drugs or alcohol is a contributing factor material to the determination of disability, the claimant still bears the burden of proving that his limitations are disabling independent of drug or alcohol abuse. Brown v. Apfel, 192 F.2d 492, 498 (5th Cir. 1999); 20 C.F.R. § 416.935.

While there is no question Jarvis suffered from seizures which limited his ability to perform work, he did not carry his burden of proving he would still suffer from seizures if he quit drinking entirely. Nor did he prove compliance with his treatment for three or more months. In light of his failure to adhere to prescribed treatment, the ALJ found it was not necessary to further analyze the frequency and severity of his seizures. Jarvis provides no evidence to the contrary. Thus, substantial evidence supports the ALJ's finding that Jarvis' severe impairments, either alone or in combination, do not meet or medically equal either Listing 11.02 or 11.03.

---

[1] In fact, the April 24, 2007 seizure was accompanied by alcohol use and non-compliance with medication (R. 149, 152).

Listing 12.02

Jarvis also, without more, contends Listing 12.02 should be "considered" because of the blood clot in his brain and subsequent memory impairment (Doc. 13, p. 5). Jarvis fails to make mention of or point to any evidence in the record which shows he meets either the criteria listed in either paragraph B or paragraph C of Listing 12.02.

Paragraph B requires a showing that his mental impairment resulted in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The ALJ noted Jarvis' testimony regarding his daily activities (driving, mowing the grass, bar-b-quing, performing a few household chores like sweeping, vacuuming, and taking out the trash, grocery shopping, caring for himself and his pets and balancing a bank account) as well as his ability to get along with people as evidence that he does not have marked restriction in either activities of daily living or social function. Again, Jarvis fails to point to any evidence to the contrary and a review of the record does not reveal any. Accordingly, the determination that paragraph B criteria are not met is supported by substantial evidence.

The ALJ does not go into detail regarding paragraph C

9

criteria. Instead, he simply states the evidence failed to establish the existence of paragraph C criteria. I have reviewed the record as a whole and agree no such evidence exists. As substantial evidence supports the ALJ's finding that neither paragraph B or paragraph C criteria was met, Jarvis' impairments, alone or in combination, do not meet or medically equal Listing 12.02.

Medical Expert

Jarvis contends the ALJ erred in failing to require the presence of a medical expert at the hearing. As acknowledged by Jarvis, it is within the ALJ's discretion as to whether or not he requests the assistance of a medical expert. 20 C.F.R. §416.927(f)(2). Further, Jarvis fails to provide any compelling argument as to why this choice by the ALJ amounts to error.

Though Jarvis contends the transcript shows the ALJ felt the record was incomplete, my reading of the record reveals that the ALJ felt the record was incomplete as to current medical records and that providing those records would be sufficient, which was done. Further, there was no need for clarification of the correlation between Jarvis' seizures and alcohol consumption as the medical records show he was instructed to abstain.

As it was within the ALJ's discretion to choose whether or not a medical expert was needed at the hearing and because there is no showing that the ALJ abused that discretion, this argument lacks

merit.

Vocational Expert

Jarvis' final contention is the ALJ's hypothetical question failed to take into consideration "any seizure activity whatsoever". (Doc. 13, p.7). A hypothetical question is not defective if it reasonably incorporates all disabilities recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects. Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001), citing Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

The hypothetical question posed by the ALJ to the VE reasonably incorporated Jarvis' disabilities, including his seizure disorder. Though he did not specifically mention the word "seizure", he did note the restrictions which were supported by record evidence that arose from his seizure disorder.[2] Specifically noted were his need to avoid workplace hazards such as unprotected heights or dangerous moving machinery and his inability to climb ladders, ropes or scaffolds. The only other work related restriction which Jarvis contends should have been included was his need to take unscheduled breaks and a significant time to recover from a seizure. However, this limitation is not supported by any

---

[2] A letter issued by Laura Arrington, M.A., CCC-SLP specifically stated she could not recommend Jarvis return to his construction job as he could pose a risk to himself and others.

11

evidence other than Jarvis' testimony which the ALJ discounted. As the limitation lacks objective support, the ALJ was under no obligation to include it in his hypothetical or RFC. <u>Owens v. Heckler</u>, 770 F.2d 1276, 1282 (5th Cir. 1985).

The ALJ's hypothetical reasonably included Jarvis' disabilities and his attorney was afforded the opportunity to address any perceived deficiencies. Accordingly, as the hypothetical question was not defective, this contention lacks merit and should be dismissed.

## Conclusion

Accordingly, IT IS RECOMMENDED that Jarvis' appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 8th day of February, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE